**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

WILLIAM NAVARRO CASTILLO,

        Plaintiff,

    v.

CPT. JOHNSON; DR. CHAVEZ; DR. KING;
OFFICER COX; OFFICER ROBINSON;
OFFICER FOSTER; NURSE STRICKLAND;
OFFICER BENIT; OFFICER SMITH;
OFFICER BRANTLEY; W/O PAUL; W/O
KILGORE; and OFFICER MCCRAY,

        Defendants.

CIVIL ACTION NO.: 6:16-cv-49

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. (Doc. 1.) For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Plaintiff's monetary damages claims against Defendants in their official capacities and **DISMISS** Plaintiff's claims against Defendants King, Smith, Johnson, Chavez, Cox, Benit, McCray, Paul, Kilgore, Foster, and Robinson. The Court **DIRECTS** the United States Marshal to serve Defendants Brantley and Strickland with a copy of Plaintiff's Complaint and a copy of this Order.

## BACKGROUND

Plaintiff contends that Officer Brantley, a correctional officer at Georgia State Prison, was assigned to administrative lockdown on May 1, 2014, and was picking up the food trays. Plaintiff asserts he had previously notified Defendant Brantley's supervisor that Defendant

Brantley was not giving ice to prisoners in administrative lockdown, even though it was May and beginning to get hot. Plaintiff asserts that, when he put his cup out to get ice, Defendant Brantley intentionally closed the box on Plaintiff's hand, resulting in the destruction of the middle finger on Plaintiff's right hand. (Doc. 1, p. 5.) According to Plaintiff, Defendant Brantley walked away from the cell and left Plaintiff's finger in the cell door box, despite Plaintiff yelling and bleeding. Plaintiff maintains his cell mate helped remove his finger from the box, and after a period of time of yelling, an officer came to the cell. Plaintiff showed this officer his finger and said he needed medical attention, and this officer reported Plaintiff's injuries and need for medical attention to Defendant Brantley. In response, Defendant Brantley said, "Don't worry about it he would be alright[sic]." (Id. at p. 8.)

Plaintiff contends Defendant Johnson came to his cell and asked what happened, and Defendant Johnson took Plaintiff to the infirmary where he received seven stitches. Plaintiff maintains Dr. Chavez scheduled for Plaintiff to be seen in the infirmary on a daily basis, but she did not request that Plaintiff be sent to the medical unit. (Id. at p. 9.)

Plaintiff also contends he began experiencing increased pain and that his finger began bleeding excessively approximately four hours after he returned to his cell, and he informed Officer Cox. According to Plaintiff, Officer Cox gave him two small bandages and told Plaintiff to clean his finger using the sink, which put him at risk of getting a serious and fatal infection.

Officers Benit and McCray were running the showers the next day, and Plaintiff showed them his finger and told them about the pain he was experiencing. Officer McCray said he would notify his supervisor. (Id. at p. 10.) Plaintiff states he encountered Defendant Johnson on his way back from the shower, and Defendant Johnson told him Dr. Chavez had recommended that Plaintiff return to the medical unit on a daily basis to change his bandages. Defendant

Johnson told Plaintiff he would return to get Plaintiff but never did. Plaintiff contends Wardens Paul and Kilgore came through the dorm for a daily inspection, and when they saw Plaintiff's finger, Defendant Paul told him he would talk to medical staff about his finger. (Id. at p. 11.)

Nurse Strickland was passing out medication in the dorm, and Plaintiff showed her his finger. Nurse Strickland stated she would report to his injuries the medical staff, but Plaintiff did not receive medical treatment that day, including from Nurse Strickland. Plaintiff also showed his finger to Officer Foster, who said he would report it to his supervisor. Approximately two hours later, Defendant Foster informed Plaintiff that Defendant Johnson was aware of his injury, yet Plaintiff did not receive medical treatment.

On May 5, 2014, Plaintiff contends Defendant Johnson told Plaintiff he was sick and tired of Plaintiff complaining about his finger and asked Plaintiff whether he wanted to go to medical. Plaintiff answered in the affirmative, but Defendant Johnson never returned to his cell to take him to medical. Additionally, Plaintiff contends he showed Officer Robinson his finger, and Officer Robinson said she would call the infirmary but never came back to Plaintiff's cell. (Id. at p. 13.) Plaintiff avers he was in pain for twelve days before he finally received medical treatment, and he does not have any feeling in his right middle finger. Plaintiff sues all Defendants in their official and individual capacities.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must

dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal

theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). The requisite review of Plaintiff's Complaint raises several doctrines of law, which the Court discusses in turn.

## DISCUSSION

### I.      Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official

capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. The Court should **DISMISS** these claims.

## II.     Supervisory Liability Claims Against Defendants Paul and Kilgore

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[1] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Braddy, at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears that Plaintiff may have sued Defendants Paul and Kilgore based solely on their position as Wardens. To the extent Plaintiff bases his claims on their supervisory positions alone, that is an insufficient ground for liability under Section 1983. Moreover, as discussed below, while Plaintiff showed Defendants Paul and Kilgore his finger, he does not make a

---

[1]  The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

sufficient allegation to show that they were deliberately indifferent to his medical condition. Thus, the Court should **DISMISS** Plaintiff's supervisor liability claims against Defendants Paul and Kilgore.

### III.    Defendants King and Smith

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements.  First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States."  Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995).  Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law."  Id.  In addition, "[a] pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

Though Plaintiff names King and Smith as Defendants in this case, he makes no mention of or factual allegations against these Defendants.  Thus, Plaintiff has not met the basic pleading requirements as to Defendants King and Smith.  Consequently, the Court should **DISMISS** King and Smith as named Defendants in this case.

### IV.    Plaintiff's Deliberate Indifference Claims

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  This right to safety is violated when a defendant shows a deliberate indifference to a substantial risk of serious harm.  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828).  In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a

deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by

conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. "The meaning of 'more than gross negligence' is not self-evident[.]" Id.

To prove a delay in providing medical treatment caused harm, a plaintiff must present evidence of: "'(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay.'" Keele v. Glynn Cty., Ga., 938 F. Supp. 2d 1270, 1292 (S.D. Ga. 2013) (quoting Goebert, 510 F.3d at 1327). However, "'accidental inadequacy, negligence in diagnosis or treatment, [and] medical malpractice'" are insufficient to sustain a claim of deliberate indifference. Id. (alteration in original) (quoting Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011)). In addition, a plaintiff who asserts that a delay in obtaining medical treatment amounts to a constitutional violation is required to submit verifying medical evidence into the record "to establish the detrimental effect of [any] delay in medical treatment to succeed." McDaniels v. Lee, 405 F. App'x 456, 458–59 (11th Cir. 2010) (internal citation omitted).

Here, Plaintiff fails to establish that the majority of the named Defendants were deliberately indifferent to a serious medical need. For example, when Plaintiff told Defendant Johnson what was wrong with his finger, Defendant Johnson took Plaintiff to the infirmary. Additionally, when Defendants Paul and Kilgore were made aware of Plaintiff's condition, Defendant Paul contacted medical. Even accepting as true Plaintiff's contentions that he did not receive medical care and treatment for twelve days, Plaintiff does not set forth sufficient facts indicating that any particular Defendant he told about his condition ignored Plaintiff's allegedly serious medical need. Instead, by Plaintiff's own admission, these Defendants stated they would notify medical staff of Plaintiff's need for medical care. Although Plaintiff contends he did not receive medical treatment after informing various Defendants of his medical needs, he does not

contend these Defendants did not do what they said they would do—contact medical staff. Absent in Plaintiff's Complaint is any contention that his medical needs were ignored by the majority of the named Defendants. Rather, Plaintiff only maintains that he did not receive treatment for several days' time. Based on his allegations, Plaintiff fails to state plausible deliberate indifference claims against Defendants Johnson, Chavez, Cox, Benit, McCray, Paul, Kilgore, Foster, and Robinson, and the Court should **DISMISS** Plaintiff's deliberate indifference claims against these Defendants.

In contrast, Plaintiff arguably sets forth a deliberate indifference claim against Defendant Brantley, as Plaintiff contends Defendant Brantley knew he was bleeding and in pain and ignored Plaintiff. Further, Plaintiff arguably sets forth a deliberate indifference claim against Defendant Strickland, as Plaintiff contends he informed Nurse Strickland of his condition, and she failed to attend to his injury. Thus, Plaintiff's deliberate indifference claims against Defendants Brantley and Strickland survive frivolity review. In addition, Plaintiff arguably sets forth a claim against Defendant Strickland that her delay in obtaining medical care and treatment exacerbated his condition, as he now contends he has lost all feeling in his finger.

## V. Plaintiff's Excessive Use of Force Claim

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used

was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff has made sufficient allegations to state a plausible claim that Defendant Brantley used excessive force against him on May 1, 2014. He alleges that Defendant Brantley slammed his finger in the box on his cell door intentionally and for no reason and that he was injured as a result. This claim survives frivolity review.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities and **DISMISS** Plaintiff's claims against Defendants King, Smith, Johnson, Chavez, Cox, Benit, McCray, Paul, Kilgore, Foster, and Robinson.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations in his Complaint arguably state colorable claims for relief under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need against Defendants Brantley and Strickland and for an excessive use of force against Defendant Brantley. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon Defendants Brantley and Strickland by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that the United States Marshal effect service. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a

copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes

of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete

responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution and failure to follow the court's orders if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants'

motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of August, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA