# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| WILLIAM NAVARRO CASTILLO, | |
| Plaintiff, | CIVIL ACTION NO.: 6:16-cv-49 |
| v. | |
| NURSE STRICKLAND; and OFFICER BRANTLEY, | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. (Doc. 1.) Defendant Strickland filed a Motion to Dismiss, (doc. 10), to which Plaintiff filed Responses, (docs. 16, 17, 33, 35, 37). For the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendant Strickland's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendant Strickland for his failure to exhaust his administrative remedies, and **DENY** Plaintiff *in forma pauperis* status on appeal.[1]

## BACKGROUND

Plaintiff contends that Defendant Brantley, a correctional officer at Georgia State Prison, was assigned to administrative lockdown on May 1, 2014, and was picking up the food trays. Plaintiff asserts he previously notified Defendant Brantley's supervisor that Defendant Brantley was not giving ice to prisoners in administrative lockdown, even though it was May and

---

[1] This Report and Recommendation addresses only Defendant Strickland's Motion to Dismiss. Even if the Court adopts this Report and Recommendation, Plaintiff's claims against Officer Brantley remain pending. Following the Court's action on this Report and Recommendation, the Court will address lifting the stay of this case and will issue a Scheduling Order.

beginning to get hot. Plaintiff asserts that, when he put his cup out to get ice, Defendant Brantley intentionally closed the box on Plaintiff's hand, resulting in the destruction of the middle finger on Plaintiff's right hand. (Doc. 1, p. 5.) According to Plaintiff, Defendant Brantley walked away from the cell and left Plaintiff's finger in the cell door box, despite Plaintiff yelling and bleeding. Plaintiff maintains his cell mate helped remove his finger from the box, and after yelling for a period of time, an officer came to the cell. Plaintiff showed this officer his finger and said he needed medical attention, and this officer reported Plaintiff's injuries and need for medical attention to Defendant Brantley. In response, Defendant Brantley said, "Don't worry about it he would be alright [sic]." (Id. at p. 8.)

Plaintiff contends Captain Johnson came to his cell and asked what happened, and Captain Johnson took Plaintiff to the infirmary where he received seven (7) stitches. Plaintiff maintains Dr. Chavez scheduled for Plaintiff to be seen in the infirmary on a daily basis, but she did not request that Plaintiff be sent to the medical unit. (Id. at p. 9.)

Nurse Strickland was passing out medication in the dorm on some later date[2], and Plaintiff showed her his finger. Nurse Strickland stated she would report his injuries to the medical staff, but Plaintiff did not receive medical treatment that day, including from Nurse Strickland. Plaintiff also showed his finger to an officer, who said he would report it to his supervisor. Approximately two hours later, this officer informed Plaintiff that his supervisor was aware of his injury, yet Plaintiff did not receive medical treatment. Plaintiff avers he was in pain

---

[2] Based on Plaintiff's pleadings filed after his Complaint, it appears the unspecified date he alleged in his Complaint could be May 10, 2014. (See Doc. 16, p. 3.)

2

for twelve days before he finally received medical treatment, and he does not have any feeling in his right middle finger.[3] (Id. at p. 13.)

On August 8, 2016, I recommended that the Court dismiss Plaintiff's monetary damages claims against Defendants in their official capacities and dismiss his claims against Defendants King, Smith, Johnson, Chavez, Cox, Benit, McCray, Paul, Kilgore, Foster, and Robinson. (Doc. 7.) However, I directed service of Plaintiff's Complaint on Defendants Strickland and Brantley. (Doc. 8.) Defendant Strickland then filed her Motion to Dismiss on October 11, 2016. (Doc. 10.) Subsequently, the Court adopted the Report and Recommendation, (doc. 13), and, after a number of issues regarding service of the Complaint, Defendant Brantley filed an Answer, (doc. 49).

## DISCUSSION

In her Motion, Strickland asserts Plaintiff failed to exhaust his available administrative remedies as to his claims against her prior to the filing of his Complaint. Strickland also asserts Plaintiff fails to state a claim upon which relief may be granted. (Doc. 10-1, p. 1.) In response, Plaintiff contends he exhausted his administrative remedies as to the assertions he made in his Complaint against Strickland, to the extent those remedies were made available to him. (Doc. 16, p. 1.) Plaintiff avers Defendant Strickland was deliberately indifferent to his serious medical needs. (Doc. 17.)[4]

---

[3] Plaintiff's Complaint contains seemingly contradictory statements. While he states Dr. Chavez gave him seven (7) stitches on the date of his injury, Plaintiff later states he did not receive any medical attention for twelve (12) days.

[4] Plaintiff's three other pleadings docketed as Responses to the Motion to Dismiss, (docs. 33, 35, 37), are not responsive to Defendant Strickland's Motion to Dismiss, and the Court has not considered these pleadings in reaching the recommended disposition of the Motion to Dismiss. Instead, in these pleadings, Plaintiff addresses his claims against Defendant Brantley.

As set forth below, I agree that Plaintiff failed to exhaust his administrative remedies as to his claims against Defendant Strickland prior to the filing of his Complaint, and Defendant's Motion is due to be granted on this basis.

**I.      Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties'

conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

## II.    Exhaustion Requirements

### A.    Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit"). Additionally, the Supreme Court has "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And

that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007)

(finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

## B. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 10-2, pp. 10–25.) This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. (Id. at p. 13.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id. at p. 14.) Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (Id. at p. 13.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 16 (emphasis in original).) A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday." (Id. at p. 11.) The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor. (Id. at p. 16.) A grievance "must" pertain to "a single issue/incident." (Id.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. (Id.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The Warden "should reject the grievance if it . . . [i]s not filed timely." (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to deliver a decision to the inmate. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at p. 19.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the

time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 20.) The Commissioner has 100 calendar days after receipt to render a decision. (Id. at p. 21.) These time limits may be waived for good cause. (Id. at pp. 16, 20.) Good cause is defined as a "legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or an appeal[,]" such as having a serious illness or being housed away from a facility covered by this SOP. (Id. at p. 11.)

### C. Plaintiff's Efforts at Exhaustion

Defendant Strickland contends that, although Plaintiff has filed seven (7) grievances since he was transferred to Georgia State Prison and one (1) of those grievances concerned the May 1, 2014, excessive use of force incident, Plaintiff failed to name Defendant Strickland or mention her alleged deliberate indifference regarding Plaintiff's middle finger. (Doc. 10-1, p. 6.) Defendant asserts the only grievance Plaintiff filed relating to the issues raised in his Complaint was Grievance Number 172470, in which he mentioned the damage to his finger but failed to mention Defendant Strickland's alleged actions after the injury. (Id. at p. 7.) Strickland avers the grievance procedure was available to Plaintiff, yet he failed to grieve about Defendant Strickland's actions. Accordingly, Defendant Strickland asserts Plaintiff's claims against her should be dismissed.

In response, Plaintiff states he did what he was supposed to do regarding the filing of grievances, but "they was refusing my counselor['s]" assistance. (Doc. 16, p. 1.) Plaintiff attached copies of grievance forms, which he asserts speak for themselves. (Id.)

At the first step of the Turner analysis, Plaintiff exhausted the administrative remedies available to him as to the events of May 1, 2014. Reading Plaintiff's allegations liberally, he states that he attempted to file a grievance regarding Defendant Strickland's actions but was

unable to do so. However, under the more exacting crucible of Turner's second step, Plaintiff's claim of exhaustion withers.

In his Complaint, Plaintiff asserted he filed a grievance regarding the events giving rise to his Complaint on May 8, 2014. (Doc. 1, p. 3.) Plaintiff also asserted "the matter was not legally resolved as justice demand[s.]" (Id.) Although Plaintiff stated the grievance was not appealable and the matter was forwarded to the Internal Investigation Unit, he also stated he appealed to the highest level possible. (Id. at p. 4.)[5] However, by the parties' submissions to the Court, it is evident Plaintiff did not properly or fully exhaust his available administrative remedies pertaining to his claims against Defendant Strickland prior to filing his Complaint. While the Court must accept Plaintiff's assertions regarding exhaustion as true at the first step of the Turner analysis, it is under no duty to do so at the second Turner step. Instead, the Court must resolve any factual dispute between the parties to determine whether Plaintiff exhausted his available administrative remedies.

In this regard, Defendants submitted the Affidavit of Jacquelyn Ayeni, the Chief Counselor and Grievance Coordinator at Georgia State Prison. (Doc. 10-2.) Ms. Ayeni declares every offender is given an oral explanation of the grievance procedures and a copy of the orientation handbook, which includes a copy of the grievance procedures, upon his or her entry into the Georgia Department of Corrections' system. (Id. at pp. 2–3.) In addition, grievance forms are freely available to inmates in the control room of each cell house, which is staffed by an officer at all times. (Id. at p. 3.) Ms. Ayeni reviewed Plaintiff's grievance history, and that review indicated Plaintiff filed seven (7) grievances since he arrived at Georgia State Prison on January 25, 2013. (Id. at p. 7.) In particular, Plaintiff filed Grievance Number 172470 on May

---

[5] Plaintiff also stated that "there is not appeal to be executed", given that he had waited for two (2) years' time "without any administrative judicial action[.]" (Doc. 1, p. 7.)

8, 2014, and complained about Defendant Brantley slamming the tray slot of Plaintiff's cell closed and catching Plaintiff's middle finger in the slot. Plaintiff also stated Lieutenant Johnson took him to medical, and Dr. Chavez examined him. Plaintiff asserted his finger was destroyed, he wanted it fixed, and he wanted Defendant Brantley to be punished. (Id.)

"A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218–19 (11th Cir. 2010) (citing Jones, 549 U.S. at 219), and Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that.")). "Section 1997e(a)'s exhaustion requirement is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . .'" Id. at 1219 (quoting Jones, 549 U.S. at 219, in turn quoting Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)). "The statute merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. (internal citation and punctuation omitted).

However, Plaintiff failed to mention Defendant Strickland or otherwise make allegations regarding any alleged lack of medical care and treatment based on events occurring on May 1, 2014, in his pertinent grievances. Accordingly, prison officials could not have been alerted to any problems Plaintiff faced regarding the lack of medical treatment or deliberate indifference. The evidence before the Court reveals that Plaintiff filed Grievance Number 172470 on May 8, 2014, and he relayed these events allegedly occurring on May 1, 2014: Defendant Brantley slammed the tray box on Plaintiff's finger; Defendant Brantley walked away; Lieutenant Johnson

took Plaintiff to medical; and Dr. Chavez attended to him. (Doc. 10-2, p. 44; Doc. 16, p. 2.) Additionally, Plaintiff submitted an undated grievance form[6] in which he complains about medical not sending an escort for him and refusing to call him out for his appointments from May 4 through May 10, 2014. Plaintiff contends Defendant Strickland "came around" on an unspecified date and left "without attend[ing] me." (Doc. 16, p. 3.)

The filing of Grievance Number 172470 cannot be considered to fulfill the exhaustion requirements as to the events of May 1, 2014, relating to Defendant Strickland. Plaintiff did not allege Defendant Strickland or anyone else with the medical unit ignored his injuries or was deliberately indifferent to his serious medical needs. Thus, Defendant Strickland was not alerted to Plaintiff's claims and could not have been put on notice that Grievance Number 172470 concerned her or any of her actions on May 1, 2014.

In addition, the undated grievance Plaintiff submitted also cannot be said to fulfill the exhaustion requirements. Although Plaintiff makes an allegation against Defendant Strickland in this proffered grievance, he complained about events which post-dated the events of May 1, 2014. What is more, it appears Plaintiff complained about Defendant Strickland not providing him with medical treatment on May 10, 2014. However, the events giving rise to Plaintiff's Complaint allegedly occurred on May 1, 2014. Further, Plaintiff's grievance history printout reveals that the next grievance Plaintiff actually filed after Grievance Number 172470 was Grievance Number 174190, which was dated June 2, 2014, and concerned staff negligence, not concerns over medical treatment. (Doc. 10-2, p. 35.) This record of Plaintiff's grievance history is far more credible than Plaintiff's vague contention that he filed a grievance concerning Defendant Strickland's actions and his specious documentation to support that claim. Thus,

---

[6] The earliest this grievance could be dated is May 27, 2014. Plaintiff asserted his grievance is untimely because the counselor did not make his rounds from May 8 through May 27, 2014. (Doc. 16, p. 3.)

12

under the second Turner step, the Court finds that Plaintiff did not fully pursue his available administrative remedies as to his claims against Defendant Strickland prior to filing this lawsuit.

Construing Plaintiff's claims generally, he also contends that he did not fulfill the administrative process as to his claims against Strickland because that process was unavailable to him. Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. Ross, ___ U.S. at ___ 136 S. Ct. at 1856–57 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id., ___ U.S. at ___, 136 S. Ct. at 1859 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id.

Plaintiff does not present credible evidence that he is entitled to one of the exceptions to availability the Supreme Court espoused in Ross. Rather, the Court finds Defendant's account of

13

the availability of remedies more credible than Plaintiff's account. Plaintiff ostensibly alleges staff at Georgia State Prison may have frustrated his efforts at exhaustion because the counselor did not make his rounds for a brief time. However, this allegation is belied by Plaintiff's undated grievance not appearing on his grievance history printout, Plaintiff filing a grievance within ten (10) calendar days of May 1, 2014, and his failure to even mention Defendant Strickland or any alleged deliberate indifference in that grievance.[7] Plaintiff's prolific grievance history, as well as Ayeni's affidavit, belies any argument that Plaintiff makes regarding unavailability. Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) ("[I]t was reasonable for the district court to find that [plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure."). Furthermore, the fact that prison officials kept and are able to produce records evidencing the many grievances Plaintiff filed contradicts his contention that Defendant or other prison officials mishandled or refused to accept his grievances.

For all of these reasons, Plaintiff failed to exhaust his available administrative remedies as to the claims he asserts against Defendant Strickland in this lawsuit. Consequently, the Court should **GRANT** Defendant Strickland's Motion to Dismiss and **DISMISS without prejudice** Plaintiff's claims against Defendant Strickland.

---

[7] To be clear, even if the Court were to consider Plaintiff's undated grievance—in which he does name Defendant Strickland—as having been filed in accordance with the applicable SOP, this grievance could not be considered as Plaintiff's fulfillment of the grievance procedures regarding the events giving rise to Plaintiff's Complaint, which arose on May 1, 2014. Further, the Court finds Defendant's account of Plaintiff's grievances, which includes an Affidavit and Plaintiff's grievance history printout, to be more credible than Plaintiff's account, and Defendant's account does not include reference to this undated grievance.

Given this recommended disposition of Strickland's Motion, it is unnecessary to address the alternative ground for dismissal. See Stone v. Peacock, No. CV312-091, 2014 WL 2593393, at *5 n.6 (S.D. Ga. June 10, 2014) (noting that, because defendants were entitled to summary judgment based on plaintiff's failure to exhaust, the court need not address the alternative ground for summary judgment).

### III.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[8]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[8] A certificate of appealability is not required in this Section 1983 action.

Based on the above analysis of Plaintiff's claims and Defendant Strickland's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendant Strickland based on his failure to exhaust his administrative remedies, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 21st day of November, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA